JOSEPH W. LINDNER, Plaintiff, *v.* HARRY WINSTON and Another, Defendants.

City Court of New York, New York County, August 8, 1933.

*Samuel E. Levine*, for the plaintiff.

*Gilbert & Brandeis* and *Jacob H. Gilbert*, for the defendants.

MADIGAN, J. Plaintiff, a diamond cutter or " manufacturer," seeks a determination that he is entitled to possession of a diamond obtained by defendant Winston, through his employee, defendant Frey, from one Tolkowsky for $1,451.25. Defendants by way of defense set up that they acquired the stone in the belief that Tolkowsky had good title to it. Prior to the time when Winston received the diamond from him, Tolkowsky had obtained it from plaintiff, its owner, pursuant to a memorandum agreement or receipt signed by Tolkowsky which reads as follows: " Memorandum from Joseph W. Lindner, Cutter of Diamonds, 36–40 John Street, New York, April 19, 1933. To Walter Tolkowsky, 2 W. 46th St., Longacre 5-9607. The merchandise listed below is given on memorandum only at your risk of loss or damage by theft, robbery, fire or otherwise. Title to the said merchandise is and shall remain in Joseph W. Lindner and is held by the undersigned subject to their order and is to be returned on demand. It is understood and agreed by the undersigned that nothing contained in the memorandum shall be construed to be an extension of credit or to vest in the undersigned any right or authority to transfer the said merchandise to any other person or concern, whether on memorandum or otherwise. The undersigned agrees that this transaction is and shall be subject to. all the rules, regulations and by-laws of the United Diamond Manufacturers Association and that the undersigned has knowledge of and is fully cognizant of the contents of the same; and further agrees that no act on the part of Joseph W. Lindner or the undersigned shall be deemed to be a waiver of the terms and conditions governing this transaction as set forth in the rules and regulations of the United Diamond Manufacturers Association. Rule 4 of United Diamond Mfrs. Ass'n, Inc. No delivery or transfer of merchandise by a member of this

association whether made by written memorandum or otherwise shall be deemed to pass any title or interest in the said merchandise to the transferee or subsequent holder thereof, unless or until after the owner (transferor) has rendered a bill of sale for the same and shall have received from the transferee the full amount of the purchase price indicated upon such bill and until such full payment, ownership of the merchandise shall remain in the transferor. The rendering of a bill, unless otherwise indicated shall be deemed to vest only a conditional interest and title in the said merchandise in the transferee, which title shall become absolute only upon full payment and shall be subject to being divested upon failure to pay the purchase price in full, upon demand. I Em. Dia. 6.45 cts. for $2,000. Tax not included (sgd) Walter Tolkowsky."

Tolkowsky fled with the money he received from Winston and has not been apprehended. Defendants had no right to assume from the mere fact of possession by Tolkowsky, that he could convey good title; neither can they successfully rely upon representations as to ownership he may have made. The memorandum unmistakably shows that plaintiff did not give Tolkowsky the power to sell or to transfer title. In that respect the writing is free from ambiguity, and its effect, therefore, cannot be avoided by other evidence. (*Green* v. *Wachs*, 254 N. Y. 437.) Though in fact no such evidence is presented, defendants argue in substance that the reservation of title by plaintiff is inconsistent with the surrounding facts and circumstances. For them it is suggested that the effect of the case just cited is to lead away from the actualities in trades where merchandise is intrusted to intermediaries on memoranda. It is probably true that evidence of custom and other attendant circumstances would lead to a better understanding of the underlying facts upon the basis of which dealings are had between memorandor and memorandee and between memorandee and third persons. That the memorandum itself plays any part between the memorandee and his customer is unlikely. It is more likely that the intermediary having a copy of a paper such as that involved in the present case would not show it to a prospective customer; for thereby the customer would be informed as to where the purchase might be made at the price stated in the memorandum, a figure lower than the memorandee's offer. On the other hand, if evidence were admissible to show that the terms between the "manufacturer" and the intermediate trader are not in fact disclosed to others, the true owner's position in cases like this might be made clearer; for thus the intermediary, Tolkowsky for example, would more clearly appear to be the prospective purchaser from the "manufacturer," to be a principal seeking to make a profit for himself and not an agent

hired by the owner. Thus counsel for defendants would show that the exclusion of evidence held by the Court of Appeals to be inadmissible leads to artificiality in determining controversies which should be settled on the basis of the real facts and circumstances. But no court other than the Court of Appeals may entertain the suggestion that there should be a departure from the doctrine of the case cited above.

Defendants' counsel maintains also that the loss ensuing from the theft should be borne by the party who is to blame; that the plaintiff, having intrusted the diamond to another to serve plaintiff's ends, should bear the burden of loss rather than the defendants; that in this respect rigid rules of property rights should be relaxed so as to bring about somewhat the same results as are accomplished by the Factors' Act (Pers. Prop. Law, § 43), within the provisions of which defendants' counsel has unsuccessfully sought to include Tolkowsky, who was, clearly, not a factor. But the adoption of such a policy implies a change in the law which only the Legislature can make. That *Green* v. *Wachs* (*supra*) is controlling here appears from a comparison of the memorandum which Tolkowsky signed with that in the *Green* case, which was as follows: " New York, Sept. 3, 1925. To Felix B. Vollman, City. These goods are sent for your inspection and remain the property of Henry Green and are to be returned on demand. Sale takes effect only from date of approval of your selection, and a bill of sale rendered. 1 Em. Cut Dia. in ring 13.40 $12,500 — Stone Net (Signed) Felix B. Vollman." Every essential feature of the memorandum considered in the *Green* case is found in the writing here. Both contain provision that title shall remain in the memorandor and that the article shall be returned on demand. The association rule appended to and made a part of the present memorandum provides that no delivery or transfer shall pass title or interest to the transferee or a subsequent holder unless the transferor, the memorandor, shall have rendered a bill of sale and shall have received from the transferee the full amount of the purchase price indicated in the bill of sale, and that until such full payment ownership shall remain in the transferor. This is at least as positive and unequivocal as the corresponding limitation in the *Green* case, that the sale is to take effect only from the date of approval of the memorandee's selection and the rendering of a bill of sale.

The provisions here that the merchandise is on memorandum only, that it is held subject to the memorandor's order, and that nothing contained in the writing shall be construed as an extension of credit are additional supporting features, more direct and explicit than anything before the court in *Green* v. *Wachs* (*supra*).

In the present instance, however, there is no statement like that in the *Green* case that the goods are sent for inspection. But in view of the other features found here that difference is unimportant. This case also differs from *Green* v. *Wachs* (*supra*), in that the appended association rule contains a provision that the rendering of a bill of sale by the memorandor, in the absence of full payment, shall constitute a conditional sale. That is of no consequence now inasmuch as no bill of sale was rendered. The writing which Tolkowsky signed cannot be construed as giving him power to sell, and it cannot in the face of the decision in *Green* v. *Wachs* (*supra*) be construed as giving the memorandee possession " for the purpose of sale " within the meaning of section 43 of the Personal Property Law. On what can defendants rely to support the contention that he had been clothed by plaintiff with such appearance of authority to sell that they may retain the merchandise? They did not see the memorandum, but if they had seen it it would have informed them without the possibility of equivocation that Tolkowsky did not have power to sell. Indeed, Winston is a dealer and there is no suggestion of retailing over the counter, nor of contemplated consumption, nor of any conditions as to marketing on which defendants could rely were they free to vary the effect of the writing. It is asserted for defendants that the effect of the memorandum is to cunningly deceive traders who would not, as defendants say, deal with one in possession of merchandise on a writing couched in the terms of that discussed in the *Green* case. This assertion is apparently based on the supposition that prospective customers sought by an intermediary like Tolkowsky would believe the memorandee had power to sell merely because he had possession " on memorandum." But the words " on memorandum " in themselves do not imply that the memorandee has been given power to sell. Collusion between plaintiff and Tolkowsky is not suggested by any facts presented.

Plaintiff's motion for summary judgment will be granted. Defendant's cross-motion will be denied. Damages for wrongful detention are not asked. Settle order.